**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| George M. Howes, | ) | CASE NO: 4:24CV1272 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Core Civic, Inc., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is a motion for summary judgment filed by Defendants

Core Civic, Inc., Warden Doug Fender, and numerous corrections officers.  Doc. 51.

Plaintiff George Howes has opposed the motion, and Defendants have replied in support.

Upon review, the motion to dismiss is GRANTED, and this matter is hereby DISMISSED.

**I. Factual Background**

Howes filed his complaint on July 25, 2024, alleging that he was attacked by

another inmate while incarcerated at Northeast Ohio Correctional Center, a private prison

owned by Defendant Core Civic, Inc. Howes alleged that he was stabbed ten times and that

no correctional officer responded to the incident.  Howes contends that he was carried to

the monitoring office door by other inmates.  At that time, Howes was taken to medical,

immediately transferred to a hospital, and underwent emergency surgery.  Howes alleges

that the attack left him with a punctured lung and a lacerated kidney.  Howes was returned to prison after roughly one week in the hospital with antibiotics, a wheelchair, and pain medication.

Howes' claims against the moving Defendants arise from his allegations of the treatment he received upon returning to the prison.  Howes contends that he was placed in an unsanitary segregation cell and that his medications were immediately discontinued. Howes claims that he received perfunctory examinations and changes of his wound dressing but also asserts that medical personnel were hostile towards him during any treatment.  Howes claims that his medical treatment and placement in an unsanitary cell violated his Eighth Amendment rights.  He further alleges that Core Civic was negligent in training, supervising, disciplining, and retaining its employees.

Howes' complaint also contains a count of assault and battery against the inmate that attacked him.  While the docket reflects service on the inmate, Ramous Lewis, Howes has not pursued the claim in any manner to date.

Defendants have moved for summary judgment on Howes' claims.  Defendants claim that Howes' failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") and that his claims fail substantively.  Howes has opposed the motion, and Defendants have replied in support.  The Court now resolves the parties' arguments.

**II. Standard**

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. Analysis

Congress enacted the PLRA in 1996 to "reduce the quantity and improve the quality of prisoner suits" that were flooding federal district courts nationwide and to reduce the need for federal courts to intervene in prison management. *See Porter v. Nussle*, 534 U.S.

516, 524 (2002); *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). To help achieve these objectives, the PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This mandatory exhaustion requirement acts as a gatekeeper and is intended "to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). Moreover, the term "prison conditions" in § 1997e(a) is broad enough to include claims of excessive force. *Freeman*, 196 F.3d at 644.

The PLRA does not provide a uniform federal exhaustion standard; rather, the inmate's correctional institution defines the applicable procedural rules that the inmate must follow to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, to comply with the PLRA's exhaustion requirement, an inmate must take "advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey*, 603 F.3d at 324 (citing *Woodford*, 548 U.S. at 90, 95); *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011).

Although the PLRA's exhaustion requirement is strictly construed, the statute "contains its own, textual exception to mandatory exhaustion" that applies when remedies are not "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016). Thus, an inmate must only

exhaust available remedies, not unavailable ones. *Id*. (citing 42 U.S.C. § 1997e(a)). The Supreme Court has identified three situations in which an administrative procedure is unavailable to prisoners and is therefore not subject to the exhaustion requirement: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643-44.

Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because the Sixth Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)). "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." *Id*. (quoting *Risher*, 639 F.3d at 240) (internal quotation marks omitted).

In support of their argument that Howes' failed to exhaust, Defendants highlight that Howes had used some of the initial steps of the grievance process, demonstrating his knowledge of the process.  Moreover, during his deposition, Howes was asked as follows:

> Q. At any time while you were at NEOCC, were you unable to access the grievance process?
>
> A. No.

Q. Were you ever denied forms?

A. No.

Doc. 51-3 at 56. As such, there is no dispute that Howes had access to the grievance process and was aware of the steps required to complete the process. Moreover, the record demonstrates that Howes did not take the steps to finalize the grievance process.

In response, Howes offers a single, conclusory assertion:

Contrary to that assertion, plaintiff submits that he pursued filing kites, informals and grievances and therefore was in compliance with the PRLA. He also asserts he was prevented from following through fully with the procedure due to defendants' failures and but for defendants' failures Mr. Howes would have complied fully with the PRLA by pursuing appeals of kites, informals and grievances. See, for example, Doc.#1, at ¶32 wherein plaintiff asserts defendants failed to provide medical care and treatment to plaintiff, despite his repeated requests and thus infringed on his constitutional rights.

Doc. 61 at 3-4. Notably, Howes offers *no evidence* in support of his claim that the Defendants somehow impeded his ability or frustrated the purpose of the grievance process. Instead, the record reflects that Howes simply abandoned the process when he did not like the response to initial informal grievance. As such, Howes has failed to exhaust his administrative remedies without justification. His claims against the prison and prison staff, therefore, must be dismissed.

While the Court finds no need to address the substantive challenges to Howes' claims, it does note that Howes' brief in opposition is deficient. Howes repeatedly relies upon the fact that evidence must be viewed in a light most favorable to him but offers no citations to any evidence. While Defendants had previously filed Howes' deposition, his opposition offers no citations to his own testimony, nor to any of the exhibits that would support his arguments. In fact, it appears that his entire opposition brief contains 3 citations

to a Report generated by Core Civic that does not relate to the specific facts of Howes' incident. As such, were the Court to conduct a full review of the merits of Howes' claims, it would also be inclined to grant summary judgment on that basis as well.

### IV. Conclusion

Based upon the above, Defendants' motion for summary judgment s is GRANTED. Judgment is entered in favor of Defendants Core Civic, Inc., Warden Doug Fender, Corrections Officer English, Dr. Lisk, and Dr. Sergent.

Within 14 days of this Order, Howes shall file a motion for default judgment against the remaining Defendant Ramous Lewis. If Howes takes no action, that final claim will be dismissed for want of prosecution.

IT IS SO ORDERED.

May 11, 2026
DATE

 */s/ Judge John R. Adams*
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT